1 | KAREN P. HEWITT
United States Attorney
2 | AARON B. CLARK
Assistant U.S. Attorney
3 | California State Bar No. 239764
United States Attorney's Office
4 | 880 Front Street, Room 6293
San Diego, California 92101-8893
5 | Telephone: (619) 557-6787/(619) 235-2757 (Fax)
Email: aaron.clark@usdoj.gov
6 |
Attorneys for Plaintiff
7 | United States of America

8 | UNITED STATES DISTRICT COURT

9 | SOUTHERN DISTRICT OF CALIFORNIA

10 | UNITED STATES OF AMERICA,                )    Criminal Case No. 08CR0091-L
                                             )
11 |                            Plaintiff,   )    DATE:        February 19, 2008
                                             )    TIME:           2:00 p.m.
12 |               v.                         )    Before Honorable M. James Lorenz
                                             )
13 | ISAAC NAVARRO-LOMELI,                    )    UNITED STATES' RESPONSE TO
                                             )    DEFENDANT'S MOTIONS TO:
14 |                        Defendant(s).     )
                                             )    (1)    COMPEL DISCOVERY;
15 |                                          )    (2)    PRESERVE EVIDENCE;
                                             )    (3)    DISMISS INDICTMENT DUE TO
16 |                                          )           IMPROPER GRAND JURY;
                                             )    (4)    DISMISS INDICTMENT DUE TO
17 |                                          )           UNCONSTITUTIONAL STATUTE;
                                             )           AND
18 |                                          )    (5)    GRANT    LEAVE    TO    FILE
                                             )           FURTHER MOTIONS
19 |                                          )
                                             )    TOGETHER WITH STATEMENT OF
20 |                                          )    FACTS AND MEMORANDUM
     _____)    OF POINTS AND AUTHORITIES
21 |

22 |          COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its

23 | counsel, Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant U.S. Attorney,

24 | and hereby files its Response to Defendant's Motions in the above-referenced case. Said Response

25 | is based upon the files and records of this case together with the attached statement of facts and

26 | memorandum of points and authorities.

27 | //

28 |

1

DATED: February 8, 2008.

2

Respectfully submitted,

3

KAREN P. HEWITT
United States Attorney

4

5

s/ Aaron B. Clark
AARON B. CLARK

6

Assistant United States Attorney

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1  KAREN P. HEWITT
   United States Attorney
2  AARON B. CLARK
   Assistant U.S. Attorney
3  California State Bar No. 239764
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6787/(619) 235-2757 (Fax)
   Email: aaron.clark@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,              )    Criminal Case No. 08CR0091-L
                                          )
11                                        )    DATE:        February 19, 2008
                         Plaintiff,       )    TIME:        2:00 p.m.
12                                        )    Before Honorable M. James Lorenz
                    v.                    )
13                                        )
   ISAAC NAVARRO-LOMELI,                  )    UNITED STATES' STATEMENT OF
14                                        )    FACTS AND MEMORANDUM OF
                         Defendant(s).    )    POINTS AND AUTHORITIES
15 _____  )

16                          I

17              **STATEMENT OF THE CASE**

18          The Defendant, Isaac Navarro-Lomeli (hereinafter "Defendant"), was charged by a grand

19 jury on January 9, 2008 with violating 21 U.S.C. §§ 952 and 960, importation of marijuana, and

20 21 U.S.C. § 841(a)(1), possession of marijuana with the intent to distribute.  Defendant was

21 arraigned on the Indictment on January 10, 2008, and entered a plea of not guilty.

22                          II

23               **STATEMENT OF FACTS**

24          Defendant was apprehended on the morning of November 28, 2007, by United States

25 Customs and Border Protection ("CBP") Officers at the Calexico, California (West) Port of Entry.

26

27

28                          3

1    There, Defendant entered the vehicle inspection lanes as the driver, sole occupant, and registered

2    owner of a 1986 Dodge Ram ("the vehicle").

3    At primary inspection, Defendant provided a negative customs declaration and presented

4    a valid Permanent Resident card to CBP Officer Huerta.  He further stated he was headed to work.

5    During his inspection of the vehicle at primary, Officer Huerta noticed an abnormality in the truck

6    bed area: after tapping the bottom of the bed, he noticed that there was no vibration to the top of

7    the bed.  Officer Huerta thereafter escorted Defendant and the vehicle to the secondary lot.

8    At secondary inspection, a Narcotic Detector Dog ("NDD") alerted to the bed of the

9    vehicle. Further inspection of the vehicle ultimately revealed a non-factor compartment in the bed.

10    The compartment contained 9 packages of marijuana, weighing a total of 46.46 kilograms (102.21

11    lbs.).  A pat down of Defendant also revealed a small plastic bindle inside Defendant's wallet. The

12    bindle contained an unweighable amount of cocaine.

13    In a post-<u>Miranda</u> statement, Defendant admitted that he was paid $1500.00 to smuggle

14    marijuana into the United States.

### III

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**A.    <u>DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE</u>**

**1.    The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements

subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements

*in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or

recorded statements, written records containing substance of Defendant's oral statements *in*

*response to government interrogation*, and Defendant's grand jury testimony).

a.    <u>The Government Will Comply With Rule 16(a)(1)(D)</u>

To the extent he has a criminal record, Defendant has already been provided with his or

her own "rap" sheet and the government will produce any additional information it uncovers

4

1    regarding Defendant's criminal record. Any subsequent or prior similar acts of Defendant that the

2    government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be

3    provided, along with any accompanying reports, at a reasonable time in advance of trial.

4                   b.        The Government Will Comply With Rule 16(a)(1)(E)

5            The government will permit Defendant to inspect and copy or photograph all books,

6    papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof,

7    that are material to the preparation of Defendant's defense or are intended for use by the

8    government as evidence-in-chief at trial or were obtained from or belong to Defendant.

9            Reasonable efforts will be made to preserve relevant physical evidence which is in the

10   custody and control of the investigating agency and the prosecution, with the following

11   exceptions: drug evidence, with the exception of a representative sample, is routinely destroyed

12   after 60 days, and vehicles are routinely and periodically sold at auction.  Records of radio

13   transmissions, if they existed, are frequently kept for only a short period of time and may no longer

14   be available. Counsel should contact the Assistant United States Attorney assigned to the case two

15   weeks before the scheduled trial date and the Assistant will make arrangements with the case agent

16   for counsel to view all evidence within the government's possession.

17                   c.        The Government Will Comply With Rule 16(a)(1)(F)

18           The government will permit Defendant to inspect and copy or photograph any results or

19   reports of physical or mental examinations, and of scientific tests or experiments, or copies

20   thereof, that are within the possession of the government, and by the exercise of due diligence may

21   become known to the attorney for the government and are material to the preparation of the

22   defense or are intended for use by the government as evidence-in-chief at the trial.  Counsel for

23   Defendant should contact the Assistant United States Attorney assigned to the case and the

24   Assistant will make arrangements with the case agent for counsel to view all evidence within the

25   government's possession.

26

27

28                                                            5

d.    The Government Will Comply With Its Obligations Under <u>Brady v.</u>
<u>Maryland</u>

The government is well aware of and will fully perform its duty under <u>Brady v. Maryland</u>,
373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory
evidence within its possession that is material to the issue of guilt or punishment.  Defendant,
however, is not entitled to all evidence known or believed to exist that is, or may be, favorable to
the accused, or that pertains to the credibility of the government's case.  As stated in <u>United States</u>
<u>v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

> [T]he prosecution does not have a constitutional duty to disclose every bit of
> information that might affect the jury's decision; it need only disclose information
> favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted).  <u>See also</u> <u>United States v. Sukumolachan</u>, 610 F.2d 685,
687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not
exist); <u>United States v. Flores</u>, 540 F.2d 432, 438 (9th Cir. 1976) (<u>Brady</u> does not create any
pretrial privileges not contained in the Federal Rules of Criminal Procedure).

e.    Discovery Regarding Government Witnesses

(1)    <u>Agreements.</u>  The government has disclosed or will disclose the
terms of any agreements by Government agents, employees, or attorneys with witnesses that
testify at trial.  Such information will be provided at or before the time of the filing of the
Government's trial memorandum.[1]  The government will comply with its obligations to disclose
impeachment evidence under <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

(2)    <u>Bias or Prejudice.</u>  The government has provided or will provide
information related to the bias, prejudice or other motivation to lie of government trial witnesses
as required in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959).

---

[1]    As with all other offers by the government to produce discovery earlier than it is required
to do, the offer is made without prejudice.  If, as trial approaches, the government is not prepared
to make early discovery production, or if there is a strategic reason not to do so as to certain
discovery, the government reserves the right to withhold the requested material until the time it
is required to be produced pursuant to discovery laws and rules.

6

1    (3)    Criminal Convictions.    The government has produced or will

2    produce any criminal convictions of government witnesses plus any *material* criminal acts which

3    did not result in conviction.    The government is not aware that any prospective witness is under

4    criminal investigation.

5    (4)    Ability to Perceive.    The government has produced or will produce

6    any evidence that the ability of a government trial witness to perceive, communicate or tell the

7    truth is impaired or that such witnesses have ever used narcotics or other controlled substances,

8    or are alcoholics.

9    (5)    Witness List.    The government will endeavor to provide Defendant

10    with a list of all witnesses which it intends to call in its case-in-chief at the time the government's

11    trial memorandum is filed, although delivery of such a list is not required.    See United States v.

12    Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Culter, 806 F.2d 933, 936 (9th Cir.

13    1986); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).    Defendant, however, is not

14    entitled to the production of addresses or phone numbers of possible government witnesses.    See

15    United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert. denied, 419 U.S. 834 (1974).

16    Defendant has already received access to the names of potential witnesses in this case in the

17    investigative reports previously provided to him or her.

18    (6)    Witnesses Not to Be Called.    The government is not required to

19    disclose all evidence it has or to make an accounting to Defendant of the investigative work it has

20    performed.    Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d

21    770, 774-775 (9th Cir. 1980).    Accordingly, the government objects to any request by Defendant

22    for discovery concerning any individuals whom the government does not intend to call as

23    witnesses.

24    (7)    Favorable Statements.    The government has disclosed or will

25    disclose the names of witnesses, if any, who have made favorable statements concerning

26    Defendant which meet the requirements of Brady.

27

28    7

1     (8) <u>Review of Personnel Files.</u>  The government has requested or will

2 request a review of the personnel files of all federal law enforcement individuals who will be

3 called as witnesses in this case for <u>Brady</u> material.  The government will request that counsel for

4 the appropriate federal law enforcement agency conduct such review.  <u>United States v. Herring</u>,

5 83 F.3d 1120 (9th Cir. 1996); <u>see</u>, <u>also</u>, <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir.

6 1992); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

7    Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v.</u>

8 <u>Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

9 to the defense that meets the appropriate standard of materiality . . ." <u>United States v. Cadet</u>, 727

10 F.2d at 1467, 1468.  Further, if counsel for the United States is uncertain about the materiality of

11 the information within its possession in such personnel files, the information will be submitted to

12 the Court for <u>in</u> <u>camera</u> inspection and review.

13     (9) <u>Government Witness Statements.</u>  Production of witness statements

14 is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies

15 on direct examination. <u>United States v. Taylor</u> , 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States</u>

16 <u>v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)).  Indeed, even material believed to be exculpatory and

17 therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject

18 to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under

19 the Act.  <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

20    The government reserves the right to withhold the statements of any particular witnesses

21 it deems necessary until after the witness testifies.  Otherwise, the government will disclose the

22 statements of witnesses at the time of the filing of the government's trial memorandum, provided

23 that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal

24 Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse

25 <u>Jencks</u>" statements at that time.

26

27

28               8

1

f.    The Government Objects To The Full Production Of Agents' Handwritten
Notes At This Time

2

3    Although the government has no objection to the preservation of agents' handwritten notes,

4    it objects to requests for full production for immediate examination and inspection. If certain

rough notes become relevant during any evidentiary proceeding, those notes will be made

5    available.

6

7    Prior production of these notes is not necessary because they are not "statements" within

the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a

8    witness' assertions *and* they have been approved or adopted by the witness. United States v.

9    Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932,

10    936-938 (9th Cir. 1981).

11

g.    All Investigatory Notes and Arrest Reports

12

13    The government objects to any request for production of all arrest reports, investigator's

notes, memos from arresting officers, and prosecution reports pertaining to Defendant. Such

14    reports, except to the extent that they include Brady material or the statements of Defendant, are

15    protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in

16    connection with the investigation or prosecution of the case."

17

18    Although agents' reports may have already been produced to the defense, the government

is not required to produce such reports, except to the extent they contain Brady or other such

19    material. Furthermore, the government is not required to disclose all evidence it has or to render

20    an accounting to Defendant of the investigative work it has performed. Moore v. Illinois,

21    408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

22

h.    Expert Witnesses.

23

24    Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial

memorandum, the government will provide the defense with notice of any expert witnesses the

25    testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of

26    Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the

27

28    9

1    reasons therefor, and the witnesses' qualifications.  Reciprocally, the government requests that the

2    defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

3                    i.        Information Which May Result in Lower Sentence.

4        Defendant has claimed or may claim that the government must disclose information about

5    any cooperation or any attempted cooperation with the government as well as any other

6    information affecting Defendant's sentencing guidelines because such information is discoverable

7    under Brady v. Maryland.  The government respectfully contends that it has no such disclosure

8    obligations under Brady.

9        The government is not obliged under Brady to furnish a defendant with information which

10   he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), cert. denied,

11   479 U.S. 1094 (1987); United States v. Prior, 546 F.2d 1254, 1259 (5th Cir. 1977).  Brady is a rule

12   of disclosure.  There can be no violation of Brady if the evidence is already known to Defendant.

13       Assuming that Defendant did not already possess the information about factors which

14   might affect their respective guideline range, the government would not be required to provide

15   information bearing on Defendant's mitigation of punishment until after Defendant's conviction

16   or plea of guilty and prior to his sentencing date.  "No [Brady] violation occurs if the evidence is

17   disclosed to the defendant at a time when the disclosure remains of value."  United States v.

18   Juvenile Male, 864 F.2d 641 (9th Cir. 1988).

19   **B.    THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE
           INDICTMENT SHOULD NOT BE DISMISSED**

20

21       **1.    Introduction**

22       Defendant makes contentions relating to two separate instructions given to the grand jury

23   during its impanelment by United States District Judge Larry A. Burns on January 10, 2007.

24   Defendant's Memorandum of Points and Authorities at 6-18 (hereafter "Memorandum").[2]

25   _____

26       [2] Defendant supplies a partial transcript of the grand jury proceedings which records the
     instructions to the impaneled grand jurors after the voir dire had been conducted.  See Exhibit A

27                                                                                    (continued...)

28                                        10

1    Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184

2    (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant

3    here contends Judge Burns went beyond the text of the approved instructions, and by so doing

4    rendered them improper.  Defendant appears to argue that these alleged improprieties require

5    dismissal of the Indictment.

6         In making his arguments concerning the two separate instructions, Defendant attacks two

7    separate bases relating to empaneling of the grand jury, both of which were discussed in United

8    States v. Isgro, 974 F.2d 1091 (9th Cir. 1992).  Concerning the first attacked instruction,

9    Defendant appears to urge this Court to dismiss the Indictment by exercising its supervisory

10   powers over grand jury procedures.³/  This is a practice the Supreme Court discourages as

11   Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the

12   grand jury's operational separateness from its constituting court, it should come as no surprise that

13   we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes

14   of grand jury procedure.").  Id.  Isgro reiterated:

15        [A] district court may draw on its supervisory powers to dismiss an
          indictment.  The supervisory powers doctrine "is premised on the inherent ability
16        of the federal courts to formulate procedural rules not specifically required by the
          Constitution or Congress to supervise the administration of justice."  Before it may
17        invoke this power, a court must first find that the defendant is actually prejudiced
          by the misconduct.  Absent such prejudice – that is, absent "'grave' doubt that the

18

19   _____

20   (...continued)
     to Memorandum (hereafter "Exhibit A").  Defendant also supplies a partial transcript of the grand
21   jury proceedings which records the voir dire of several potential witnesses.  See Exhibit B to
     Memorandum (hereafter "Exhibit B").  To amplify the record herein, the United States is
22   supplying a redacted supplemental transcript which records relevant portions of the voir dire
     proceedings.  See Appendix to United States' Response and Opposition to Defendant's Motions
23   (hereafter "United States' Appendix").

24
         ³ Defendant's Motion never actually addresses the relief requested (i.e.
25   dismissal of the indictment) except in the heading of the memorandum. [Defendant's
     Memorandum at 6.] Neither does Defendant discuss the standard or grounds on which
26   the Court is to measure whether relief can be afforded.  The United States' response,
     however,  assumes this was likely a mere oversight by Defendant.
27

28                                        11

1    decision to indict was free from the substantial influence of [the misconduct]" – a
     dismissal is not warranted.

2

3    974 F.2d at 1094 (citation omitted, emphasis added).  Concerning the second attacked instruction,

4    in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the

5    Constitution as a reason to dismiss the Indictment.  <u>See</u> Memorandum at 18 ("A grand jury so

6    badly misguided is no grand jury at all under the Fifth Amendment.").  Concerning that kind of

7    a contention, <u>Isgro</u> stated:

8        [A] court may dismiss an indictment if it perceives constitutional error that
         interferes with the grand jury's independence and the integrity of the grand jury
9        proceeding.  "Constitutional error is found where the 'structural protections of the
         grand jury have been so compromised as to render the proceedings fundamentally
10       unfair, allowing the presumption of prejudice' to the defendant."  Constitutional
         error may also be found "if [the] defendant can show a history of prosecutorial
11       misconduct that is so systematic and pervasive that it affects the fundamental
         fairness of the proceeding or if the independence of the grand jury is substantially
12       infringed."

13   974 F.2d at 1094 (citation omitted).[4]

14       The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

15           You cannot judge the wisdom of the criminal laws enacted by Congress,
         that is, whether or not there should or should not be a federal law designating
16       certain activity as criminal.  That is to be determined by Congress and not by you.

17   408 F.3d at 1187, 1202.

18           The United States Attorney and his Assistant United States Attorneys will
         provide you with important service in helping you to find your way when
19       confronted with complex legal problems.  It is entirely proper that you should
         receive this assistance.  If past experience is any indication of what to expect in the
20       future, then you can expect candor, honesty, and good faith in matters presented
         by the government attorneys.

21

22   408 F.3d at 1187, 1206.

23

24

25       [4]  In <u>Isgro</u>, the defendants choose the abrogation of constitutional rights route when
26   asserting that prosecutors have a duty to present exculpatory evidence to grand juries.  They did
     not prevail.  974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights
27   sufficient to support the dismissal of the indictment."  (relying on <u>Williams</u>)).

28                                          12

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[5/] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

**2.    The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

---

[5] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.

And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Exhibit A at 8-9.[6/]

In line with <u>Navarro-Vargas</u>, Judge Burns instructed the grand jurors that they were forbidden "from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you." Exhibit A at 8. Defendant claims, however, that the instructions "make it painfully clear that grand jurors simply may not choose not to indict in the event of what appears to them to be an unfair application of the law: should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient. . . .'" Memorandum at 12-13. Defendant contends that this addition to the approved instruction "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." <u>Id</u>. at 13. Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when excused prospective grand jurors.

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Memorandum at

---

[4] The United States' Appendix recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted to include redaction of the individual names, so as to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the supplemental transcript supplied are: United States' Appendix at 15, line 10; 17, line 18; 24, line 14; 28, line 2; 38, line 9; and 44, line 17.

14

1    12. Defendant contends that "the instruction flatly bars the grand jury from declining to indict

2    because they disagree with a proposed prosecution." Id. at 13. This argument mixes-up two of

3    the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

4        Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the

5    wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws

6    enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202,

7    is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub

8    rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely

9    within his rights, and within the law, when he excused the three prospective grand jurors because

10   of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him

11   to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we

12   will establish, this reminder did not pressure the grand jurors to give up their discretion not to

13   return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand

14   jury from declining to indict because the grand jurors disagree with a proposed prosecution,

15   because they do not say that. That aspect of a grand jury's discretionary power (i.e., disagreement

16   with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction

17   wherein the term "should" was germane.[7] 408 F.3d at 1204-06. This other instruction bestows

18   discretion on the grand jury not to indict.[8] In finding this instruction constitutional, the court

19

20       [7] That instruction is not at issue here. It read as follows:

21
22       [Y]our task is to determine whether the government's evidence as presented
         to you is sufficient to cause you to conclude that there is probable cause to believe
23       that the accused is guilty of the offense charged. To put it another way, you
         should vote to indict where the evidence presented to you is sufficiently strong to
24       warrant a reasonable person's believing that the accused is probably guilty of the
         offense with which the accused is charged.

25   408 F.3d at 1187.

26
27       [8] The court upheld the instruction stating:

                                                                        (continued...)

28                                               15

stated in words that ring true here: "It is the grand jury's position in the constitutional scheme that

gives it its independence, not any instructions that a court might offer."  408 F.3d at 1206.  The

other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause.  That's the simple formulation that I mentioned to a number of you during the jury selection process.  Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward.  If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Exhibit A at 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime.  Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Exhibit A at 23.

While the new grand jurors were told by Judge Burns that they could not question the

wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the

discretion not to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could

_____

(...continued)

> This instruction does not violate the grand jury's independence.  The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause.  As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment.  408 F.3d at 1206.

16

1    not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be

2    dismissed as a potential jury nullification advocate.  See Merced v. McGrath, 426 F.3d 1076,

3    1079-80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this Indictment or any

4    other indictment by this Court exercising its supervisory powers.

5        Further, a reading of the dialogues between Judge Burns and the three excused jurors found

6    in the supplemental transcript excerpts (see United States' Appendix) reflects a measured,

7    thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury

8    because of their views.  Judge Burns' reference back to those three colloquies cannot be construed

9    as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their

10   duties.

11       Finally, even if there was an error, Defendant has not demonstrated he was actually

12   prejudiced thereby, a burden he has to bear.  "Absent such prejudice – that is, absent 'grave' doubt

13   that the decision to indict was free from the substantial influence of [the misconduct]' – a

14   dismissal is not warranted."  Isgro, 974 F.2d at 1094.

15
16       **3.      The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

17       Concerning the new grand jurors' relationship to the United States Attorney and the

18   Assistant U.S. Attorneys, Judge Burns variously stated:

19       [T]here's a close association between the grand jury and the U.S. Attorney's
20       Office.

21       . . . . You'll work closely with the U.S. Attorney's Office in your
         investigation of cases.

22
     Exhibit A at 11.
23
24       [I]n my experience here in the over 20 years in this court, that kind of tension does
         not exist on a regular basis, that I can recall, between the U.S. Attorney and the
25       grand juries.  They generally work together.

     Exhibit A at 12.
26

27

28                                        17

1

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

2

3

4

5    Exhibit A at 20.[9]

6

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.

7

8

9

> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

10

11

12   Exhibit A at 26-27.

13       Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that

14   cuts against what they may be asking you to do if they're aware of that evidence," Defendant

15   proposes that by making that statement, Judge Burns also "assure[d] the grand jurors that

16   prosecutors would present to them evidence that tended to undercut probable cause."

17   Memorandum at 17. Defendant then ties this statement to the later instruction which "advis[ed]

18   the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them]

19   will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'"

20   Id. From this lash-up Defendant contends:

21       These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand

22

23 ────────────────

> [9]  Just prior to this instruction, Judge Burns had informed the grand jurors that:

24

25   [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

26

27   Exhibit A at 19.

28                                    18

juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

    (1) I have to consider evidence that undercuts probable cause.

    (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

    (3) Because no such evidence was presented to me, I may conclude that there is none.

    Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

    The instructions therefore discourage investigation – if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

Memorandum at 18.[10]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 F.2d 36, 51-53 (1992) ("If the grand jury has no obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[11] (emphasis added)). See also

---

    [10] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. <u>See</u> <u>McClean v. Moran</u>, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S. 314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)). <u>See also</u> <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

    [11] Note that in <u>Williams</u> the Court established:

    Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within

(continued...)

1    United States v. Haynes, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the

2    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

3    prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury."

4    (citing Williams) (emphasis added)).

5         However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge

6    Burns was a member of the United States Attorney's Office, and made appearances in front of the

7    federal grand jury.[12]  As such he was undoubtedly aware of the provisions in the United States

8    Attorneys' Manual ("USAM").[13]  Specifically, it appears he is aware of USAM Section 9-11.233,

9    which states:

10        In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court
          held that the Federal courts' supervisory powers over the grand jury did not include
11        the power to make a rule allowing the dismissal of an otherwise valid indictment
          where the prosecutor failed to introduce substantial exculpatory evidence to a
12        grand jury. It is the policy of the Department of Justice, however, that when a
          prosecutor conducting a grand jury inquiry is personally aware of substantial
13        evidence that directly negates the guilt of a subject of the investigation, the
          prosecutor must present or otherwise disclose such evidence to the grand jury
14        before seeking an indictment against such a person. While a failure to follow the
          Department's policy should not result in dismissal of an indictment, appellate
15        courts may refer violations of the policy to the Office of Professional
          Responsibility for review.

16

17    _____

18    (...continued)
              limits, formulate procedural rules not specifically required by the Constitution or
19            the Congress,"  he argues that imposition of the Tenth Circuit's disclosure rule is
              supported by the courts' "supervisory power."
20

21    504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no
      authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent
22    supervisory authority over their own proceedings." 504 U.S. at 55.  See also United States v.
      Haynes, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in Isgro used
23    Williams' holding that the supervisory powers would not be invoked to ward off an attack on
      grand jury procedures couched in constitutional terms.  974 F.2d at 1096.
24

25        [12] He recalled those days when instructing the new grand jurors.  Exhibit A at 12, 14-16,
      17-18.

26
          [13] The USAM is available on the World Wide Web at www.usdoj.gov/usao/
27    eousa/foia_reading_room/ usam/index.html.

28                                              20

1    (Emphasis added.)<u>14/</u> This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

2    of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or

3    supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly

4    negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment,

5    <u>see</u> USAM § 9-11.233 ."  (Emphasis added.)<u>15/</u>

6         The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed

7    guidelines for United States Attorneys, does not create the constitutional crisis proposed by

8    Defendant.  No improper presumption/inference was created when Judge Burns reiterated what

9    he knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of

10   the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because

11   no "substantial" exculpatory evidence exists.<u>16/</u>  If it does exist, as mandated by the USAM, the

12   evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of

13

14        [14] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.  Even if
     Judge Burns did not know of this provision in the USAM while he was a member of the
15   United States Attorney's Office, because of the accessability of the USAM on the Internet, as the
     District Judge overseeing the grand jury he certainly could determine the required duties of the
16   United States Attorneys appearing before the grand jury from that source.

17        [15] <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly,
     this new section does not bestow any procedural or substantive rights on defendants.
18

19        Under this policy, the government's disclosure will exceed its constitutional
          obligations. This expanded disclosure policy, however, does not create a general
20        right of discovery in criminal cases. Nor does it provide defendants with any
          additional rights or remedies.
21

22   USAM 9-5.001, ¶"E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.
     htm.
23

24        [16] Recall Judge Burns also told the grand jurors that:

25        [T]hese proceedings tend to be one-sided necessarily. . . . Because
          it's not a full-blown trial, you're likely in most cases not to hear the
26        other side of the story, if there is another side to the story.

27   Exhibit A at 19.

28

possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[17/] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM

---

[17] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

1    excludes defendants from reaping any benefits from the self-imposed policy.[18]  Therefore, while

2    the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms

3    of advising the grand jurors of their rights and responsibilities, and does not cast an

4    unconstitutional pall upon the instructions which requires dismissal of the indictment in this case

5    or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the

6    United Sates Attorneys are "good guys," which was authorized by <u>Navarro-Vargas</u>.  408 F.3d at

7    1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly

8    "remind[ed] the grand jury that it stands between the government and the accused and is

9    independent," which was also required by <u>Navarro-Vargas</u>.  408 F.3d at 1207.  In this context the

10   unnecessary "duty-bound" statement does not mean the instructions were constitutionally

11   defective requiring dismissal of this indictment or any indictment.

12        The "duty bound" statement constitutional contentions raised by Defendant do not indicate

13   that the "'structural protections of the grand jury have been so compromised as to render the

14   proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and

15   "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

16   pervasive that it affects the fundamental fairness of the proceeding or if the independence of the

17   grand jury is substantially infringed."  <u>Isgro</u>, 974 F.2d at 1094 (citation omitted).  Therefore, this

18   Indictment, or any other indictment, need not be dismissed.

19   **C.    <u>DEFENDANT'S STATEMENTS ARE ADMISSIBLE</u>**

20        Defendant moves to suppress statements and requests that the Government prove that

21   all statements were voluntarily made, and made after a knowing and intelligent <u>Miranda</u>

22   waiver. Defendant, however, fails to support his motion with the required declaration. CrimLR

23   47.1(g).  Defendant's Motion should therefore be denied.

24

25   _____

26        [18]  The apparent irony is that although an Assistant U.S. Attorney will not lose a case for
     failure to present exculpatory information to a grand jury per <u>Williams</u>, he or she could lose his
27   or her job with the United States Attorney's Office for such a failure per the USAM.

28                                          23

1    Even if Defendant had attached the required declaration, Defendant's statements are

2    admissible.

3    **1.     Standards Governing Admissibility of Statements**

4    A statement made in response to custodial interrogation is admissible under Miranda v.

5    Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence

6    indicates that the statement was made after an advisement of rights, and was not elicited by

7    improper coercion. Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of

8    evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda

9    rights should be found in the "absence of police overreaching"; "coercive police activity is a

10   necessary predicate to the finding that a confession is not 'voluntary'"). Although the totality

11   of circumstances, including characteristics of the defendant and details of the interview, should

12   be considered, improper coercive activity is a necessary predicate to suppression of any

13   statement. Id.; cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Although it is

14   possible for a defendant to be in such a poor mental or physical condition that they cannot

15   rationally waive their rights (and  misconduct can be inferred based on police knowledge of

16   such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the

17   defendant was rendered utterly incapable of rational choice. United States v. Kelley, 953 F.2d

18   562, 565 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as

19   insufficient to prevent exercise of rational choice).

20   **2.     Defendant's Statements Should Not Be Suppressed**

21   Defendant claims his statements were "made as a result of the coercive tactics

22   employed by the agents." [Deft's Memorandum at 21.] Defendant makes no effort to elaborate

23   on this assertion, however, and, as mentioned above, fails to support his allegation with the

24   required declaration. CrimLR 47.1(g). Furthermore, the agents in this case complied with

25   Miranda. Defendant's statements are therefore admissible.

26

27

28                                                    24

1        Defendant's post-arrest statements are admissible because he voluntarily waived his

2  Miranda rights.  A statement made in response to custodial interrogation is admissible under

3  Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the

4  evidence indicates that the statement was made after an advisement of rights, and was not

5  elicited by improper coercion.  Colorado v. Connelly, 479 U.S. 157, 167-70 (1986)

6  (preponderance of evidence standard governs voluntariness and Miranda determinations; valid

7  waiver of Miranda rights should be found in the "absence of police overreaching"; "coercive

8  police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

9        On November 28, 2007, at about 9:00 a.m., Immigration and Customs Enforcement

10  ("ICE") Agent Frank Gonzalez advised Defendant of his Miranda rights as witnessed by ICE

11  Agent Joseph Morquecho.  Defendant acknowledged that he understood his rights and agreed

12  to waive his rights and make a statement.  Defendant's statement was recorded on video.

13  These recordings, which Defendant received in discovery, make clear that Defendant was

14  advised of his Miranda rights and that he voluntarily waived his rights prior to making any

15  statements.

16        Again, Defendant has not alleged any specific facts to support that the advisement of

17  rights was somehow flawed or that his waiver of his Miranda rights was the result of improper

18  coercion.  Indeed, Defendant's allegation of a Miranda violation is mere boilerplate language

19  that fails to demonstrate there is a disputed factual issue requiring an evidentiary hearing.  See

20  United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary

21  hearing on a motion to suppress need be held only when the moving papers allege facts with

22  sufficient definiteness, clarity, and specificity to enable the trial court to conclude that

23  contested issues of fact exist.");  United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989)

24  (where "defendant, in his motion to suppress, failed to dispute any material fact in the

25  government's proffer, . . . . the district court was not required to hold an evidentiary hearing").

26  Accordingly, this Court should deny Defendant's motion to suppress and find, based on the

27

28                                25

1    Statement of Facts attached to the Complaint in this case, that Defendant's statements were

2    voluntary and given in accordance with Miranda. See Batiste, 868 F.2d at 1092 (government

3    proffer based on the statement of facts attached to the complaint is alone adequate to defeat a

4    motion to suppress where the defense fails to adduce specific and material facts).

5    **D.    THE DRUG STATUTES ARE CONSTITUTIONAL, AND THE INDICTMENT
        NEED NOT ALLEGE KNOWLEDGE OF THE AMOUNT AND TYPE OF
6        NARCOTICS**

7        The Ninth Circuit has already squarely and repeatedly rejected the claim that the federal

8    drug laws, including 21 U.S.C. §§ 841, 952, and 960, are facially unconstitutional. See United

9    States v. Jimenez, 300 F.3d 1166, 1171 (9th Cir. 2002); United States v. Marcucci, 299 F.3d 1156,

10   1165 (9th Cir.), cert. denied, 123 S. Ct. 1600 (2002); United States v. Carranza, 289 F.3d 634, 643

11   (9th Cir.), cert. denied, 537 U.S. 1037 (2002); United States v. Buckland, 289 F.3d 558, 562 (9th

12   Cir.) (en banc), cert. denied, 535 U.S. 1105 (2002); United States v. Mendoza-Paz, 286 F.3d 1104,

13   1109-10 (9th Cir.), cert. denied, 537 U.S. 1038 (2002); United States v. Varela- Rivera, 279 F.3d

14   1174, 1175 n.1 (9th Cir. 2002). Defendant's arguments to the contrary are meritless.

15       Furthermore, in Carranza, the Ninth Circuit reaffirmed longstanding precedent that the

16   United States need not prove that defendants knew the type or quantity of controlled substance

17   they were smuggling in order to sustain a conviction under the federal drug statutes. Id. at

18   643-44. The United States must prove only that defendants knew they were smuggling some type

19   of controlled substance. Id. at 644. Any argument that Carranza should be ignored was rejected

20   by the Ninth Circuit in United States v. Hernandez, 322 F.3d 592, 602 (9th Cir. 2003). Again,

21   Defendant's argument has no merit.

22   **E.    NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

23       The United States does not object to the granting of leave to allow Defendant to file further

24   motions, as long as the order applies equally to both parties and additional motions are based on

25   newly discovered evidence or discovery provided by the United States subsequent to the instant

26   motion at issue.

27

28                                          26

## IV

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that Defendant's motions, except where not opposed, be denied.

//

//

//

//

DATED: February 8, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Aaron B. Clark
AARON B. CLARK
Assistant United States Attorney

27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES' EXHIBIT**

Supplemental redacted transcript of Hon. Larry A. Burns's instructions to the January 2007
Grand Jury

1  UNITED STATES DISTRICT COURT

2  SOUTHERN DISTRICT OF CALIFORNIA

3  UNITED STATES OF AMERICA,                    Case No. 08CR0091-L

4              Plaintiff                        CERTIFICATE OF SERVICE

5        v.

6  ISAAC NAVARRO-LOMELI,

7              Defendant(s).

8

9  IT IS HEREBY CERTIFIED THAT:

10       I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of

11  age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

12       I am not a party to the above-entitled action.  I have caused service of UNITED STATES'
    RESPONSE TO DEFENDANT'S MOTIONS on the following parties by electronically filing the

13  foregoing with the Clerk of the District Court using its ECF System, which electronically notifies
    them.

14       1.  Robert Henssler, Esq.

15       I declare under penalty of perjury that the foregoing is true and correct.

16       Executed on February 8, 2008.

17

18                                  s/ Aaron B. Clark
                                    AARON B. CLARK

19

20

21

22

23

24

25

26

27

28