1  **ROBERT R. HENSSLER, JR.**
   California Bar No. 216165
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   Telephone: (619) 234-8467
4

5  Attorneys for Mr. Isaac Navarro-Lomeli

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                    (HONORABLE L. JAMES LORENZ)

11 | UNITED STATES OF AMERICA,      ) Case No. 08CR0091-L
   |                                 )
12 |              Plaintiff,         ) Date: June 9, 2008
   |                                 ) Time: 10:00 a.m.
13 |         v.                      )
   |                                 ) STATEMENT OF FACTS AND
14 | ISAAC NAVARRO-LOMELI,           ) MEMORANDUM OF POINTS AND
   |                                 ) AUTHORITIES IN SUPPORT OF
15 |              Defendant.         ) DEFENDANT'S MOTIONS IN LIMINE
   |                                 )

16

17                              **I.**

18                       **STATEMENT OF FACTS**

19  Mr. Navarro-Lomeli hereby incorporates his previously submitted statement of facts in this case.

20                              **II.**

21                           **MOTIONS**

22 **A.  Any Proposed Expert Testimony Addressing the Street Value of Marijuana Must Be Excluded**

23     **1.  Any Testimony Asserting that Mr. Navarro-Lomeli Must Have Possessed Knowledge
            of the Marijuana in the Vehicle Because of its Supposed Street Value Violates FRE 704**
24          **and Must be Excluded.**

25  FRE 704 provides:

26  No expert witness testifying with respect to the mental state or condition of a defendant in
    a criminal case may state an opinion or inference as to whether the defendant did or did not
27  have the mental state or condition constituting an element of the crime charged or of a
    defense thereto. Such ultimate issues are matters for the trier of fact alone.
28

Ninth Circuit case law does not limit this rule to psychiatric witnesses; rather, it applies any time an expert seeks to opine on a defendant's knowledge, willfulness, or other mental state. See United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses"); United States v. Webb, 115 F.3d 722 (9th Cir. 1997) (holding it impermissible under FRE 704(b) for expert to testify, even in hypothetical form, whether defendant knew of weapons concealed in car.).

Any proposed expert who would opine -- directly or indirectly -- that Mr. Navarro-Lomeli must have known that his vehicle contained marijuana testifies as to his mental processes or condition. Whatever the form, the government may not use the trappings of "expertise" to bolster speculation on Mr. Navarro-Lomeli's alleged knowledge. This testimony is expressly forbidden by FRE 704 and by Ninth Circuit law. Accordingly, an order in limine must be granted excluding this testimony.

**2.    Rule 403 Prohibits Street Value Testimony in Any Event.**

Even assuming that this testimony were otherwise admissible, Rule 403 prohibits expert testimony on the street value of marijuana at trial. According to the government's argument, this testimony is relevant because drug trafficking organizations would not entrust this "valuable commodity" to an unknowing person. This reasoning rests on rank speculation as to the mental processes of unknown persons. The government cannot simply proffer evidence on what these vague and unknown "drug traffickers" would or would not do in a given situation. There is virtually no probative value in this proposed testimony.

In contrast, this testimony will result in substantial prejudice to Mr. Navarro-Lomeli. The sheer monetary value of this marijuana could inflame the passions of the jury, and distract them from Mr. Navarro-Lomeli's lack of knowledge -- the true issue in this case. The amount of money at stake could well suggest that a vast drug empire is implicated here; indeed, this inference is a key premise in the government's relevance argument. This insinuation, however, has no evidentiary support and is not relevant. Beyond the government's attenuated and factually unsupported argument that the value of these drugs demonstrates the defendant's knowledge, absolutely no probative value exists in this testimony. The prejudice, in contrast, is extreme. This testimony should therefore be independently excluded under FRE 403.

//

//

      **3.**     **If Necessary, Mr. Navarro-Lomeli Will Stipulate that This Marijuana is a Distributable Amount.**

If the government argues that the value of the marijuana is relevant to establish that it was a distributable amount, Mr. Navarro-Lomeli is prepared to stipulate under Old Chief v. United States, 117 S. Ct. 644 (1997), that the amount involved here is a distributable amount to avoid the inevitable prejudicial impact of this evidence.

**B.**    **This Court Should Exclude Any Expert Testimony Describing the Structure of Supposed Drug Smuggling Organizations, as it Is Irrelevant, Improper under FRE 702 and 703, and Unduly Prejudicial under FRE 403.**

Under Ninth Circuit precedent United States v. Vallejo, 237 F.3d 1008 (9th Cir. 2001), United States v. McGowan, 274 F.3d 1251 (9th Cir. 2001) and United States v. Perez, No. 07-10207, 2008 U.S. App. LEXIS 7603 (9th Cir. April 1, 2008) (unpublished), structure testimony may not be permitted in this trial. This sort of "expert" testimony not only fails the balancing test set forth by FRE 403, but also is literally irrelevant and an abuse of discretion under FRE 401. Vallejo 237 F.3d at 1017. The same problem exists with any organizational structure evidence in this case. The government has not charged Mr. Navarro-Lomeli with conspiracy. No evidence whatsoever suggests that a vast drug trafficking network played any role in the instant offense. Any attempt, then, to connect Mr. Navarro-Lomeli to a vast drug empire that has not been alleged and has not been proven violates FRE 401, 403, and Ninth Circuit case law. A motion in limine excluding such evidence should be granted accordingly.

**C.**    **Evidence of Alleged "Nervous" Behavior Is Inherently Unreliable, Misleading, and Inadmissible under FRE 403, 702, and 703.**

It is anticipated that the government will call witnesses at trial to assert that Mr. Navarro-Lomeli appeared "nervous" at the checkpoint, and that this evidence somehow bears on whether he knew marijuana was concealed in the vehicle he was driving. This testimony is bereft of probative value, is overly prejudicial, and should be excluded pursuant to Federal Rule of Evidence 403. Moreover, there is no proper foundation for such lay witness opinion testimony pursuant to Federal Rule of Evidence 701. It should be excluded as a result.

//

//

1. **Testimony That Mr. Navarro-Lomeli Appeared "Nervous", If Used to Suggest Knowledge, Is Substantially More Prejudicial Than Probative Under FRE 403 and Should be Excluded.**

Federal Rule of Evidence 403 requires the Court to exclude proposed evidence if the "[p]robative value is substantially outweighed by danger of unfair prejudice." This is such a case.

When a lay witness has had no background contact with a person, speculation as to whether they appeared nervous has minimal, if any, probative value. See United States v. Wald, 216 F.3d 1222, 1227 (10th Cir.2000) (en banc) (evidence of nervousness "is of limited significance"[,] "particularly when [the agent] had no prior acquaintance with the [defendant]."); United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) ("We have repeatedly held that nervousness is of limited significance . . . and that the government's repetitive reliance on the nervousness . . . must be treated with caution"); see also Gall v. Parker, 231 F.3d 265, 292 (6th Cir. 2000) (testimony that Gall seemed "nice [and] normal" and "not nervous" error because -- "we have long been skeptical of such lay testimony"); United States v. Smith, 437 F.2d 538, 540-41 (6th Cir. 1970)(lay testimony as to mental state lacks probative value when a witness's "direct knowledge of the defendant is brief and superficial.").

Vague allusions to "nervousness" reveal little meaningful evidence in a criminal trial because, as courts nationwide recognize, people confronted with law enforcement often exhibit these signs without having done anything wrong. See Untied States v. Chavez-Valenzuela, 268 F.3d 719 (9th Cir. 2001) ("[N]ervousness during a traffic stop–even . . . extreme nervousness . . . in the absence of this particularized, objective factors, does not support a reasonable suspicion of criminal activity . . . ."); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1142 (9th Cir. 2000) (recognizing that "drivers stopped at the border (or anywhere else) can be nervous for many reasons, one being a natural unease when confronted by an authority figure and another being fear of getting caught with contraband the person knows he is carrying"); Wald, 208 F.3d at 907 (it is not uncommon for most citizens, even innocent ones, to exhibit signs of "innocuous" nervousness when confronted by a law enforcement); United States v. Wood, 106 F.3d 942, 947 (10th Cir. 1997) ("[i]t is certainly not uncommon for most citizens--whether innocent or guilty--to exhibit signs of nervousness when confronted by law enforcement officer."); Fernandez, 18 F.3d at 879 (same); United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992) (same); United States v. Grant, 920 F.2d 376, 386 (6th Cir. 1990)

//

("[n]ervousness is entirely consistent with innocent behavior"); United States v. Andrews, 600 F.2d 563, 566, n.4 (6th Cir. 1979) (noting inconsistent rationales taken by government in explaining nervousness).

Thus, courts across the country recognize that alleged "nervousness" can stem from any number of sources, and can be easily misinterpreted by persons not familiar with a given defendant. Because the government is trying to infer guilt from the nervousness at issue here, and because the border agents who witnessed Mr. Navarro-Lomeli had never met him before, this testimony carries little probative weight.

In contrast, substantial potential for prejudice exists. Upon hearing from a law enforcement agents that Mr. Navarro-Lomeli was "nervous," the jury will be inclined to assume his guilt instead of an equally plausible innocent explanation. Indeed, this logical leap is the precise reason that the government continually seeks to introduce such testimony. All told, any proposed testimony that Mr. Navarro-Lomeli displayed signs of nervousness is irrelevant to the issue at hand and should be excluded under Federal Rule of Evidence 403 as being substantially more prejudicial than probative.

**2. Admission of Nervousness Testimony Violates FRE 701.**

Finally, such evidence should be excluded if it is couched in terms of an agent's personal opinion about Mr. Navarro-Lomeli's mental state -- i.e., "he was nervous." The agent's personal opinion as to Mr. Navarro-Lomeli's mental state is irrelevant; this conjecture also rests on no prior knowledge of the defendant and upon a very limited observation. As such, it violates Rule 701. In Gonzalez-Rivera v. INS, 22 F.3d 1441 (9th Cir. 1994), the Ninth Circuit held that an INS agent's testimony at a suppression hearing that an individual was nervous must be disregarded because it was not based upon "reliable, objective evidence." Id. at 1447. There, when explored, the basis for the agent's testimony was that the individual appeared to have a "dry mouth." The court stated that absent reliable, objective testimony that people who are nervous have a dry mouth, as opposed to just being thirsty, this inference was nothing more than "subjective feelings [which] do[] not provide any rational basis for separating out the illegal aliens from the American citizens and legal aliens." Id. Likewise any testimony in the instant case that Mr. Navarro-Lomeli, was "nervous" is nothing more than a subjective judgment based upon no prior knowledge of an individual and, similarly, should not be considered by the jury. In any event, under no circumstances should the government witness' be allowed to opine that Mr. Navarro-Lomeli knew that drugs were concealed in

//

the vehicle he was driving. This testimony would directly violate FRE 701, and amounts to nothing but speculation. Accordingly, this motion in limine should be granted.

**D.    The Presence of Marijuana in the Courtroom Is Highly Prejudicial, Minimally Probative at Best, and Thus Properly Excluded under FRE 403.**

At trial, the government may attempt to present the actual bags of marijuana seized to the jury. In this particular case, in which Mr. Navarro-Lomeli's knowledge of the drugs is the only contested issue, this evidence is highly inflammatory yet has virtually no probative value as to any fact in dispute. It must be excluded under FRE 403.

FRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Presentation of the marijuana seized in this case to the jury runs afoul of this evidentiary rule.

Because the presence of the marijuana seized is undisputed in this case, there is simply no reason to bring this physical evidence into the courtroom. This lack of probative value, however, stands in contrast to the highly prejudicial nature of this contraband. Many jurors will no doubt be scandalized by the sheer volume of drugs involved in this case. In sum, this evidence proves no issue that is in dispute, yet threatens to badly prejudice Mr. Navarro-Lomeli. For these reasons, Mr. Navarro-Lomeli respectfully requests that this evidence be excluded from trial.

**E.    The Court Should Not Send the Indictment into the Jury Room During Deliberations.**

In the commentary to Model instruction 3.2.1, "Charge Against Defendant Not Evidence," the Committee on Model Jury Instructions, in the Ninth Circuit Manual of Model Jury Instructions, strongly recommends that the Indictment not be sent into the jury room during deliberations. The commentary observed that neither the Federal Rules of Criminal Procedure nor case law require sending a copy of the indictment to the jury room because the indictment is not evidence.

Mr. Navarro-Lomeli urges this Court to follow the Committee's guidance. The language in the instant Indictment intentionally mirrors the language of the charged statutes. Accordingly, jurors could be improperly persuaded by the similarities between the Indictment allegations and the elements of the crime.

//

1     Because the Indictment is not evidence, but could potentially be mistaken for such, this document should not be permitted into the jury room during deliberations.[1]

**F. The Court Should Preclude the Government from Introducing Evidence under Federal Rule of Evidence 404(b) and/or 609.**

    Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice in advance of trial" of any evidence of "othis crimes, wrongs, or acts" it plans to introduce. FRE 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Navarro-Lomeli timely requested notice of proposed 404(b) evidence in his motion to compel discovery, received on February 5, 2008. Mr. Navarro-Lomeli specifically requested that the Government provide notice of such evidence at least three (3) weeks prior to trial. To date, the government has not provided <u>any</u> notice of specific evidence that it might seek to introduce under this rule. As a result, Mr. Navarro-Lomeli requests that this court preclude introduction of any evidence of crimes, wrongs, or acts under Rule 404(b).

    If the government provides tardy notice of the intent to use an offense under FRE 404(b) or impeachment evidence under 609, Mr. Navarro-Lomeli requests the opportunity to address the government's use of the past act before trial.

**G. Introduction of "Mug Shots" of Mr. Navarro-Lomeli Are Highly Prejudicial Without Adding Any Probative Value to this Trial, Thus Meriting Exclusion under FRE 403.**

    Discovery documents provided in this case include some "mug shot"-style pictures of Mr. Navarro-Lomeli taken while he was in custody. These pictures have no place at this trial. This is not an identity case: Mr. Navarro-Lomeli does not dispute that he is the individual arrested at the checkpoint. Accordingly, these pictures have no probative value. In contrast, however, their appearance automatically puts one in mind of a criminal, and is not unlike forcing a defendant to wear jail-issued clothing while in trial. Under ER 403, these pictures are highly prejudicial and devoid of probative value. They should be excluded from trial as a result.

---

[1.]     Should the Court allow a copy of the indictment to be sent to the jury room, the Court should caution the jury that the indictment is not evidence. See United States v. Utz, 886 F.2d 1148, 1151-52 (9th Cir. 1989).

**H.     The Court Should Exclude Any Mention of Mr. Navarro-Lomeli's Financial Circumstances as a Motive for Committing this Offense.**

The defense anticipates that at trial the prosecution may attempt to elicit information regarding Mr. Navarro-Lomeli's financial circumstances, and/or may attempt to argue during closing argument that Mr. Navarro-Lomeli's financial circumstances provided a motive for him to participate in this offense.

It is impermissible for the prosecution to elicit testimony or to comment in any fashion upon the difficult financial circumstances of the defendant. Such comments upon poverty are forbidden. See United States v. Romero-Avila, 210 F.3d 1017, 1022 n.2 (9th Cir. 2000). "Poverty comments" may not be made even when the evidence commented upon is admitted by the defense. Id. 1017, 1022 n.2. Romero-Avila specifically rejected the very argument that the defendant is barred from challenging comments upon improper poverty testimony because he elicited it during cross-examination and held that the government's comments were plain error. Therefore, this Court should issue an order precluding the prosecution (1) from introducing any evidence regarding Mr. Navarro-Lomeli's financial condition, and (2) commenting upon Mr. Navarro-Lomeli's financial condition during argument.

**I.      The Court Should Preclude the Prosecution and its Witnesses from Impermissibly Vouching at Trial.**

Impermissible vouching must not be allowed during the government's case-in-chief, rebuttal or during the government's closing argument. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony" See United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993). The Supreme Court has held:

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

United States v. Young, 470 U.S. 1, 18-19 (1985) (citing Berger v. United States, 295 U.S. 78, 88-89 (1935). Similarly, the Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal

//

to the passions, fears and vulnerabilities of the jury . . . ." United States v. Weatherspoon, 410 F.3d 1142, 1149 (9th Cir. 2005). And, as the Ninth Circuit has explained:

> A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

United States v. Koon, 34 F.3d 1416, 1443 (9th Cir.1994), quoting United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir.1984).

It is also impermissible for government agents to vouch for themselves or each other. In United States v. Rudberg, 122 F.3d 1199, 1204 (9th Cir. 1997), the Ninth Circuit held that vouching can occur through the testimony of a government agent because the jury might easily identify the agent's position with the integrity of the United States. In fact, the Court noted that when that happens, vouching occurs in a "very powerful form." Id. Mr. Navarro-Lomeli requests the Court prohibit such impermissible vouching in his trial to ensure its fairness.

**J.    Mr. Navarro-Lomeli's Counsel Should Have the Opportunity to Voir Dire the Jury.**

Pursuant to Fed. R. Crim. P. 24(a), to provide effective assistance of counsel and to exercise Mr. Navarro-Lomeli's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury. Mr. Navarro-Lomeli is not asking for hours of the Court's time; rather, he is requesting a discreet opportunity to inquire into important issues that commonly arise in such a case. He is fully prepared to submit all proposed questions in advance for the Court's review.

**K.    The Court Should Exclude Mr. Navarro-Lomeli's Videotaped Statements Because its Admission Violates the Confrontation Clause and Invades the Province of the Jury.**

The government should be precluded from introducing the videotape which contains statements by Mr. Navarro-Lomeli, and at least two other individuals whose statements are not party-admissions and should be excluded under the Confrontation Clause of the Sixth Amendment, and other Ninth Circuit authorities. During the interrogation, the agents are accusatory, offer their opinions about what could happen or did happen, and repeatedly accuse Mr. Navarro-Lomeli of having a serious problem. In short, in viewing the video, it is virtually impossible to parse Mr. Navarro-Lomeli's statements from those made by the agents.

1    The government has other means to introduce these statements. It could have someone testify to the
2 statements, thus eliminating or at least minimizing the agents' commentary. They could also offer a transcript
3 with offending portions redacted.[2]

4    In *Crawford v. Washington*, 541 U.S. 36, the Supreme Court overruled twenty-four years of precedent,
5 holding that: "where testimonial evidence is at issue, . . . the Sixth Amendment demands what the common
6 law required, unavailability and a prior opportunity for cross-examination." 541 U.S. at 68, 124 S. Ct. at
7 1374. Prior to *Crawford*, "hearsay-type" evidence was admissible if it fell within a "firmly-rooted" hearsay
8 exception or bore particularized guarantees of reliability. *See id.; see also Ohio v. Roberts*, 448 U.S. 56, 100
9 S. Ct. 2531 (1980).

10    The new mode of analysis casts aside the prior hearsay exceptions for purposes of the Confrontation
11 Clause inquiry. Whether or not a statement falls within a hearsay exception is no longer relevant because the
12 new test is whether evidence sought to be introduced is or is not "testimonial." *Id.* at 61, 124 S. Ct. at 1363
13 ("Where testimonial statements are involved, we do not think the framers meant to leave the Sixth
14 Amendment's protection to the vagaries of the rules of evidence . . . ."); *see also id*. at 69, 124 S. Ct. at 1374
15 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional
16 demands is the one the Constitution actually prescribes: confrontation").[3]

17    *Crawford* definitively required confrontation in order to admit "testimonial" statements into evidence
18 and it broadly defined such "[t]estimony," in turn, [a]s typically "[a] solemn declaration or affirmation made
19 for the purpose of establishing or proving some fact." *Id*. at 51, 124 S. Ct. at 1364 (quoting N. Webster, An
20 American Dictionary of the English Language (1828)). The Supreme Court did not set forth exhaustively
21 the categories of "testimonial evidence." *Id*. at 68, 124 S. Ct. at 1374("[w]e leave for another day any effort

---

[2.]    While it is true that the videotape could be redacted to eliminate all references to the accusatory statements and other lengthy diatribes which contain multiple levels of hearsay, that only Mr. Navarro-Lomeli and not his accusers are shown implicates principles guaranteeing a defendant a "face-to-face meeting with witnesses appearing before the trier of fact." *See Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). The government agents at the interrogation of Mr. Navarro-Lomeli are "witnesses" under *Crawford v. Washington*, 541 U.S. 36, 52 (2004) ("witnesses" "bear testimony" and "statements taken by police officers in the course of interrogations are also testimonial . . . ."). In addition, *Crawford* states that the absence of an oath was not dispositive. 541 U.S. at 52.

[3.]    Of course, the hearsay exceptions remain relevant if no Confrontation Clause analysis is required, i.e., in civil cases.

to spell out a comprehensive definition of "testimonial"). Rather, in addition to the broad common-sense definition, it gave some examples, noting that, at a minimum, it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. at 68, 124 S. Ct. at 1374. The Court further states that: "*ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony, confession or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" were testimonial. *Id*.

*Crawford* itself addressed a statement that was obtained via police interrogation of the defendant's wife, and subsequently was admitted into evidence absent cross-examination. 541 U.S. at 52, 124 S. Ct. at 1364. The Court noted that whether or not a statement was "testimonial" was informed by the involvement of government officials in the production of the statement:

> Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse--a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

541 U.S. at 56, 124 S. Ct. at 1367; *see also id*. at 53, 124 S. Ct. at 1365. "[I]nterrogations by law enforcement officers fall squarely within [the class of testimonial hearsay]. While everyone assumes that the individual who is interrogated provides a statement which is "testimonial," there is no statement in *Crawford* indicating that the interrogators statements do not so qualify. *See generally id*. In fact, since *Crawford*'s main concern was with government involvement in production of testimony -- particularly in interrogations -- it would seem that should include the government officials' statements during the interrogation as well. *See id*. at 53-56; 124 S. Ct. at 1363-1365.

In fact, post-*Crawford*, several courts have not allowed the government to rely upon the rationale that certain statements were not offered for the truth or were only offered show context or the effect on the listener because "[u]nder the prosecution's theory, every time a person says to the police 'X committed the crime,' the statement (including all corroborating details) would be admissible to show why the police investigated X. That would eviscerate the constitutional right to confront and cross-examine one's accusers." *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) (reversing where district court admitted officer's testimony about confidential informant's statements even though government offered evidence not for the truth but to

show why certain actions were taken). In *United States v. Nielsen*, 371 F.3d 574 (9th Cir. 2004), the Court reversed a conviction where the trial court admitted government agent's testimony about the statements of the defendant's girlfriend – made in response to police questioning – although the government claimed they were offered not for their truth but to show why the agents took the actions they did.[4] Also, in *United States v. Cromer*, 389 F.3d 662, 674 (6th Cir. 2004), that court did not allow admission of testimony from officer's about confidential informants' statements about and descriptions of the defendant and his nickname "Nut" because it "explicitly, albeit not directly, informed the jury that someone had implicated Nut in illegal activity." *Id*. In *Cromer*, the government urged the admissibility of these statements as not offered for their truth and there was no objection to their admission. *Id*. Nevertheless, the court reversed finding a confrontation clause violation. *Id*.[5]

While *Crawford*, in parentheses in a footnote, provides: "(The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted)," *see* 541 U.S.. at 59, n.9, this was clearly dicta, and in so noting *Crawford* cites *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). In *Tennessee v. Street*, 471 U.S. at 414, the Court allowed admission in rebuttal of a co-defendant's confession where the defendant testified that he came up with the account of events he told the police because they read to him the co-defendant's confession. *See id*. The government was allowed to impeach his testimony by providing the confession which was entirely different from the version of events given by the defendant. This suggests a more limited principle of admissibility than that attempted by the government in its case-in-chief in this case.

---

[4]. The *Nielsen* court also intimated that it did not believe this was the government's true purpose in admitting these statements. *See* 371 F.3d at 582, n.1 (calling this a "post-hoc rationalization").

[5.] There is a circuit split on this issue. At least two circuits have allowed the "evisceration" of the right to confront and cross-examine one's accusers by permitting prejudicial out-of-court statements to be admitted under the guise of providing "context," explaining the investigatory steps pursued by the agents, the effect on the listener, demeanor or some other non-element. *See, e.g., United States v. Hansen,* 434 F.3d 92, 100 (1st Cir. 2006) (statements offered to provide context are not testimonial); *United States v. Walter*, 434 F.3d 30, 35 (1st Cir. 2006) (allowing admission of co-defendant's statement to provide context); *United States v. Jimenez*, 419 F.3d 34 (1st Cir. 2005) (finding admission of third party statements not error because they were admitted to provide context to the defendant statements and the investigatory steps pursued by the agents); *United States v. Hendricks*, 395 F.3d 184, 184 (3d. Cir. 2005) (allowing admission of statements by confidential informant to put the statements of the other parties to the conversation into perspective) while as set forth above, the Ninth, Sixth and Seventh Circuit have set constitutional limitations on their admission.

1   Allowing exclusion of statements from the categorical rule of the Confrontation Clause simply because they may be admitted to show "context," "effect on the listener" or to provide the "ebb and flow" of the conversation indeed "eviscerates" the Confrontation Clause, *see Silva*, 380 F.3d at 1020 and violates *Crawford's* goal in replacing court-created exceptions with categorical constitutional guarantees. *See Crawford*, 541 U.S. at 67-68 ("By replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design. Vague standards are manipulable, and, while that might be a small concern in run-of-the-mill assault prosecutions like this one, the Framers had an eye toward politically charged cases . . .where the impartiality of even those at the highest levels of the judiciary might not be so clear.").

## L. The Court Should Prevent the Government from Presenting Fragmented Portions of Mr. Navarro-Lomeli's Post-arrest Statements out of Context

Here, the prosecution may seek to introduce selected portions of Mr. Navarro-Lomeli's recorded statements. Under the Rule of Completeness and Federal Rule of Evidence 106, if the government seeks to introduce such fragmented testimony, the defense should be permitted to play additional portions of Mr. Navarro-Lomeli's statements to put into context the statements the government introduces. *See* Fed. R. Evid. 106; *United States v. Collicott*, 92 F.3d 973, 982 (9th Cir. 1996). Moreover, the defense should be permitted to do so ***at the time the government's videotape is played for the jury***. The advisory committee notes to Rule 106 specifically provide that: "[t]he rule is based on two considerations. The first is the misleading impression created by taking matters out of context. The second is the inadequacy of repair work when delayed to some point later in the trial." Fed. R. Evid. 106, adv. comm. notes.

Notwithstanding Rule 807, Rule 106 actually provides grounds to admit these statements -- one would not need to rely upon Rule 106 if another independent hearsay exception existed. *United States v. Sutto*, 801 F.2d 1346, 1368-69 (D.C. Cir. 1986) ("Rule 106 can adequately fulfill its function only by permitting the admission of some otherwise inadmissible evidence . . . ."). In *Phoenix Associates II v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995), that court recognized the difference between documents admitted as an exception to the hearsay rule and those admitted, absent an exception, pursuant to Rule 106. *Id*. ("Because Ambrosini testified that he prepared the work paper each year in the regular course of preparing appellants' financial statements, and it was the regular practice of appellants' business to make such documents, the work paper was admissible as a business record. . . . Further, because Stone's counsel offered appellants' financial statements to

establish that appellants themselves did not list a debt owed them by Stone among their assets, the work paper likewise should have been admitted for substantive purposes under Rule 106."). This case was cited with approval in *Collicott*, 92 F.3d at 983. *See also United States v. Pendas-Martinez*, 845 F.2d 938, 944 & n. 10 (11th Cir.1988) ("[T]here are conflicting Circuit Court decisions on whether [ Rule 106] makes admissible parts of a document that otherwise would be inadmissible under the Rules of Evidence ...."){collecting cases); I Hon. Joseph M. McLaughlin, Hon. Jack B. Weinstein, & Margaret A. Berger, Weinstein's Fed. Evidence S 106.03[1], at 106-15 (2d ed.2001) (noting that language of Rule 106 is ambiguous as to "whether it authorizes the admission of otherwise inadmissible evidence").

Significantly, at the time of its drafting, the government attempted to include a clause in Rule 106 requiring admission of only otherwise admissible evidence but Congress failed to include such a provision. *See* 21 Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Practice & Procedure § 5071, at 337-40 (West 1977) (noting Congress' failure to take any action in response to the Justice Department's request that a clause be added to Rule 106 to require "that evidence adduced under the Rule be otherwise admissible"). Most importantly, if evidence was admissible pursuant to another hearsay exception, there would be no need to resort to Rule 106 for admissibility. Similarly, the fact that it would otherwise be characterized as "hearsay" does not preclude its admission if admitted under a different rule, here Rule 106. *United States v. Abel*, 469 U.S. 45, 56 (1984) ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case"); *United States v. Sanchez-Robles,* 927 F.2d 1070, 1078 (9th Cir. 1991) (same).

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) does not compel a contrary result because all it provides is that Rule 106 "'does not compel admission of otherwise inadmissible hearsay evidence'" -- that is true Rule 106 only permits introduction of evidence "which ought in fairness to be considered contemporaneously" with other evidence. *See id*. Second,*Ortega* did not address the argument that Rule 106 would be unnecessary unless it was intended to admit otherwise inadmissible evidence, and finally, *Ortega* did not reverse the district court's evidentiary ruling precluding cross-examination regarding the defendant's exculpatory statements because Ortega "testified to the statements himself," so the government's presentation "did not distort the meaning of Ortega's statements . . . ." *Id*. at 683. If the Court does not permit introduction of any appropriate additional portions of the videotaped statement during the government's case, they should

be admitted during the defense case. *See id*. However, as the advisory committee to Rule 106 noted, such delayed repair work is inadequate. *See* Fed. R. Evid. 106, adv. comm. notes.

In *United States v. Li*, 55 F.3d 325, 329-30 (11th Cir. 1995) (*citing United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993)), that court, in applying the Rule of Completeness, discussed traditional considerations in that context, including whether:

1. the entire statement explains evidence,
2. places the admitted evidence in context,
3. avoids misleading the jury, and
4. insures fair and impartial understanding of the evidence.

*Li*, 55 F.3d at 329-30. Here, these factors all favor admission of the entire statement. In other words, the jury is entitled to hear the proper context of any of Mr. Navarro-Lomeli's statements the government may use. *See also United States v. Castillo*, 14 F.3d 802, 806 (2nd Cir. 1986) (use of prior consistent statements "'is also permissible when the consistent statement will amplify or clarify the allegedly inconsistent statement. It matters not whether such use is deemed a permissible type of rehabilitation or only an invocation of the principles of completeness, though not a precise use of Rule 106) (quotation omitted).[6]

### III.
### CONCLUSION

For the foregoing reasons, Mr. Navarro-Lomeli respectfully requests that this Court grant these motions in limine.

Respectfully submitted,

Dated: May 23, 2008
/s/ *Robert R. Henssler, Jr.*
**ROBERT R. HENSSLER JR.**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Navarro-Lomeli

---

[6.] In this case, the government has not provided the defense with a translated transcription of Mr. Navarro-Lomeli's statement, which is in Spanish. Given this lack of notice, it seems the government is not planning to try to introduce the any portions of his statements.